TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
RACHEL N. AGRESS (Cal. Bar No. 281703)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:    (213) 894-0487
    Facsimile:    (213) 894-6269
    E-mail:    rachel.agress@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. ED CR 19-00072-JAK |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM REGARDING DEFENDANT ANGEL PHILIP ANGULO, JR. |
| v. | |
| ANGEL PHILIP ANGULO, JR., aka "Bullet," | Hearing Date: February 25, 2021<br>Hearing Time: 12:00 P.M. |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Rachel N. Agress, hereby files its sentencing position regarding defendant Angel Philip Angulo, Jr., also known as "Bullet" ("defendant").

//

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report ("PSR") and Recommendation Letter prepared by the United States Probation Office, and any other evidence or argument that the Court may wish to consider at the time of sentencing.  The government respectfully reserves the right to respond to any arguments made in Defendant's Sentencing Memorandum.

Dated: February 11, 2021          Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division


     /s/
RACHEL N. AGRESS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On two occasions in October and November 2018, defendant distributed a total of approximately 213 grams of pure methamphetamine for $1,400 to a person he believed was a drug customer, but who was in fact an undercover agent working for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Defendant had arranged each of those drug sales with a person he believed was a drug broker (but who was in fact a confidential source). Further, prior to the November 2018 meetup, defendant and the confidential source also discussed the sale of firearms, and at the meetup itself, the defendant discussed the sale of firearms and heroin with the undercover agent. Based on those two drug transactions, defendant pled guilty to one count of distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) pursuant to a written plea agreement.

The Presentence Investigation Report ("PSR") issued by the United States Probation Office ("USPO") calculates that defendant has a total offense level of 29 and a criminal history category of VI, resulting in a Guidelines range of 151-188 months' imprisonment. (Dkt. 44, PSR ¶ 97.) The PSR also notes that there is a mandatory minimum sentence of ten years' imprisonment. (Id. ¶ 96.) After evaluating the factors to be considered by the Court in determining the sentence to be imposed pursuant to § 3553(a), the USPO recommended a sentence of 151 months' imprisonment, five years of supervised release, and a $100 special assessment. (Dkt. 43 ["Rec. Letter"] at 1, 5.)

The government agrees with the USPO's Guidelines calculations. The government maintains, however, that a mid-range Guidelines sentence of 166 months' imprisonment is appropriate because defendant has an extensive criminal history including violent and firearm-related offenses; the offense conduct in this case and the circumstances of defendant's arrest show that defendant continues to engage in serious criminal activity even while out on bail; and the crime was a serious one and does not appear to have been a one-time mistake.  Additionally, while not charged, the Court should consider the fact of defendant's prior 2010 state conviction that would have given rise to a criminal history enhancement pursuant to 21 U.S.C. § 851, with a mandatory sentence of 15 years or 180 months.  (Dkt. 34 [Amended Plea Agreement ("Plea")] ¶ 3(d); PSR ¶ 6.)  While the government recognizes that defendant has readily accepted responsibility for his crime, and that there are mitigating factors relating to suffering during defendant's childhood and early exposure to alcohol, drugs and gang life, a mid-range Guidelines sentence appropriately accounts for the relevant § 3553(a) factors in their totality.

**II.  OFFENSE CONDUCT**

On November 12, 2020, defendant pleaded guilty to one count of distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1),(b)(1)(A)(viii).  (Dkt. 34, Plea; Dkt. 42.)  As he admitted to under oath, defendant supplied methamphetamine on two occasions to an undercover agent.  (Dkt. 42; Plea ¶ 12.)  In the plea, defendant also admitted to the following facts:

On October 3, 2018, defendant spoke with a person who he believed was a drug broker, but who was in fact a confidential source working for the ATF, and agreed to sell approximately four ounces of methamphetamine for $700 later that day. (PSR ¶ 11; Plea ¶ 12.) That afternoon, defendant met the confidential source and a person who defendant believed to be a customer, but who was in fact an undercover agent working for the ATF, in a commercial parking lot. (PSR ¶ 12; Plea ¶ 12.) Inside the undercover agent's car, defendant handed the undercover agent approximately 102 grams of methamphetamine in a plastic bag in exchange for $700. (PSR ¶ 12; Plea ¶ 12.)

On November 6, 2018, defendant and the confidential source discussed the sale of narcotics and firearms. (PSR ¶ 14; Plea ¶ 12.) The confidential source texted defendant that the person defendant believed to be a customer from the first deal wanted to purchase another four ounces of methamphetamine. (PSR ¶ 14; Plea ¶ 12.) On November 7, 2018, defendant met the confidential source and the undercover agent in a commercial parking lot. (PSR ¶ 15; Plea ¶ 12.) Inside the undercover agent's car, defendant handed the undercover agent approximately 111 grams of methamphetamine in a black plastic bag in exchange for $700. (PSR ¶¶ 15, 17; Plea ¶ 12.)

During the transaction, the undercover agent inquired about purchasing a firearm from defendant. (PSR ¶ 16.) Defendant was not willing to sell the undercover agent a firearm. (PSR ¶ 16; Plea ¶ 12.) However, defendant indicated that he was considering purchasing a couple of firearms from a source who had obtained the firearms from a gun range. (PSR ¶ 16.) Defendant also indicated

that he had just recently bought a "sub-compact" and was looking to purchase other firearms. (PSR ¶ 16.) Finally, defendant asked the undercover agent if he/she was interested in the "black," i.e., the sale of heroin. (PSR ¶ 15; Plea ¶ 12.)

**III. GUIDELINES CALCULATION**

In the PSR, the USPO calculated a total offense level of 29 based on the following calculation:

| Base Offense Level: | 32 | USSG §§ 2D1.1(a)(5), 2D1.1(c)(4) |
|---|---|---|
| Acceptance of Responsibility: | -3 | USSG § 3E1.1(a)-(b) |

(PSR ¶¶ 23-37.) The USPO further determined that defendant falls within criminal history category VI based on 16 criminal history points. (PSR ¶¶ 39-50.) With a total offense level of 29 and a criminal history category of VI, the USPO calculated that defendant's Guidelines range would be 151-188 months' imprisonment. (Id. ¶ 97.) The PSR further states that defendant is subject to a ten-year mandatory minimum sentence under 21 U.S.C. §§ 841(a)(1), (b)(1)(A). (Id. ¶ 96.) After evaluating the factors to be considered by the Court in determining the sentence to be imposed pursuant to § 3553(a), the USPO recommended a low end term of 151 months' imprisonment, five years of supervised release, and a $100 special assessment. (Dkt. 43 ["Rec. Letter"] at 1, 5.)

The government concurs with the PSR's Guidelines calculations, and agrees that defendant's total offense level is 29.[1] Based on the

---

[1] On February 4, 2021, the government filed its Response to the Presentence Report for Defendant Angel Philip Angulo, Jr., (Dkt. 46), including objections to the PSR.

current state of the record, the government also agrees with the PSR's criminal history calculation, and no longer intend to argue that the career offender provision applies to defendant, an argument that was reserved in the plea agreement. (PSR ¶¶ 31-34, 44; cf. Plea ¶ 14.) Specifically, the government agrees with the PSR's decision not to categorize defendant's 2005 felony conviction as a "controlled substance offense" pursuant to U.S.S.G § 4B1.2(b), because the record here is inconclusive. (PSR ¶¶ 31-34.)

"In the criminal context, . . . the burden is on the government to establish that a prior conviction is a qualifying predicate offense, so an inconclusive record will not satisfy the government's burden." United States v. Lee, 704 F.3d 785, 790 (9th Cir. 2012) (citations omitted). In Lee, the court specifically rejected the defendant's reliance on the abstract of judgement form, holding that "the format of the form suggests this phrasing is simply a recitation of the name of the violated statute, not an attempt to describe the conduct to which Lee particularly pled." Id. at 791.

Here, the 2005 abstract of judgement stated that defendant was convicted of a violation of Health & Safety Code 11379(A) for "Import / Sale / Distr[ibution]," all of which would appear to qualify under U.S.S.G § 4B1.2(b). (Agress Decl., Ex. A). However, the complaint charged defendant with "sell[ing], transport[ing], furnish[ing], administer[ing], import[ing], and giv[ing] away" methamphetamine or offering to do the same and the Minute Order of the change of plea hearing states that "Defendant pleads Guilty to Count(1) 01." (Id., Exs. B & C.) Certain of the offenses listed in the complaint would not appear to qualify under U.S.S.G § 4B1.2(b). The transcripts of

5

the change of plea and sentencing hearings were not available.  Given the inconclusive record at hand—-i.e., it is not clear whether defendant plead guilty to the entirety of count 1 or only to the conduct listed in the abstract of judgement, the government does not intend to argue that the career offender provision applies to defendant under U.S.S.G. §§ 4B1.1 and 4B1.2.

The government maintains, however, that a mid-range Guidelines sentence of 166 months' of imprisonment is appropriate, for the reasons stated below.

**IV. A 166-MONTH MID-RANGE GUIDELINES SENTENCE IS APPROPRIATE BASED ON OFFENSE CONDUCT AND § 3553(a) FACTORS**

The government recommends that the Court sentence defendant to a term of 166 months' imprisonment and to five years of supervised release.  A sentence of 166 months' imprisonment is supported by defendant's wrongful conduct and is sufficient but not greater than necessary to comply with the purposes set forth in § 3553(a).

The conduct for which defendant was charged involved two sales of a combined half-pound (213 grams) of 100% pure methamphetamine to an unknown buyer, the undercover agent.  (PSR ¶¶ 11-17.)  Defendant also asked the undercover agent whether he/she was interested in "the black," intimating that the defendant might be able to supply heroin as well.  (Id. ¶ 16.)  Based on defendant's criminal history, defendant has previously dealt narcotics.  (Id. ¶ 46.)  As such, the offense conduct was clearly a commercial transaction, and not a one-time mistake.

Further, defendant has gang affiliations (PSR ¶ 18) and has an extensive criminal history involving violent and firearm-related

offenses, in addition to drug-related offenses: 1998 misdemeanor convictions for a theft, petty theft, and obstructing or resisting a public officer (36 months' probation, 20 days' imprisonment) (PSR ¶ 41); a 1999 felony conviction for assault by force likely to produce great bodily injury (5 years' imprisonment) (Id. ¶ 42)[2]; a 2003 felony conviction for possessing a controlled substance (2 years' imprisonment) (Id. ¶ 43)[3]; a 2004 felony conviction for import, sale or distribution of a controlled substance (4 years' imprisonment) (Id. ¶ 44); a 2009 misdemeanor conviction for possession of controlled substance paraphernalia (36 months' probation) (Id. ¶ 45); 2010 felony convictions for possession of a controlled substance for sale and for vehicular theft (8 years' and 2 years' imprisonment, respectively, to run concurrently) (Id. ¶¶ 46, 47); and 2019 felony convictions for possessing a controlled substance and loaded firearm (while on bail) and for transporting, importing, selling, furnishing or giving away a controlled substance (10 years' imprisonment on each count, to run concurrently) (Id. ¶ 47). And, while not charged, the Court may consider the fact of defendant's prior 2010 state conviction for possession for sale of a controlled substance (methamphetamine) that would have given rise to a criminal history enhancement pursuant to 21 U.S.C. § 851, with a mandatory sentence of 15 years or 180 months. (Plea ¶ 3(d); PSR ¶ 6.)

    In addition to defendant's criminal history, there is also evidence that defendant has possessed firearms on numerous occasions,

---

[2] Murder counts were dismissed and set aside. (PSR ¶ 42.)
[3] Counts charging battery against a police officer, vandalism, and use/under influence of controlled substance were dismissed. (PSR ¶ 43.)

7

and was even involved in trafficking them, despite his status as a convicted felon. During a September 2018 traffic stop, narcotics were recovered from defendant's person, and law enforcement recovered a loaded Glock 17 handgun and additional narcotics from the vehicle. (PSR ¶ 48.) In addition, during the course of the offense conduct, defendant discussed firearm sales and acquisitions with both the confidential informant and the undercover agent. (PSR ¶¶ 14, 16.)

Furthermore, defendant has engaged in new criminal activity while on pretrial release and/or while other criminal cases were pending. The September 2018 traffic stop occurred while defendant was out on bail.[4] (PSR ¶ 48.) While the criminal case arising from the September 2018 traffic stop was pending, defendant engaged in the offense conduct in the present case (controlled buys) in October and November 2018. (PSR ¶¶ 11, 14, 48.) Then, in January 2019, defendant failed to appear in connection with the September 2018 traffic stop case, and the state court issued a bench warrant. (PSR ¶ 48.) While the bench warrant was still outstanding, law enforcement received reports that defendant was planning a robbery, and executed an arrest. (Id.) At the time of his arrest, defendant was wearing a backpack containing a mask, glove, beanie with fake long hair attached, bolt cutters and zip ties. (Id.)

Respect for the law is of significant concern. (Rec. Letter at 4.) Defendant's conduct while on pretrial release and/or while other criminal cases were pending demonstrates that defendant has not been deterred from criminal behavior by encounters with law enforcement or

---

[4] The PSR does not include a description of the arrest or charges predating the traffic stop. However, the PSR does note that defendant's conviction for possession of a loaded firearm occurred while on bail. (PSR ¶ 48.)

8

conditions set by courts.  His overlapping criminal conduct during the 2018 to 2019 period is particularly egregiousness and concerning. Moreover, despite have faced prior penalties imposed by the justice system, including significant custodial sentences, defendant has continued to engage in new criminal conduct.

In mitigation, defendant swiftly accepted responsibility for his conduct in the instant case.  (PSR ¶¶ 6, 35, 36.)  The government also agrees, as reflected in the PSR and the Recommendation Letter, that the Court should take into account the tragic suffering by defendant during his childhood including early exposure to alcohol, drugs and the violence associated with gang life, and defendant's struggles with substance abuse that followed.  (Rec. Letter at 4-5; PSR ¶¶ 59-78.)

Based on the record as a whole, a mid-range Guidelines sentence appropriately accounts for the relevant § 3553(a) factors in their totality.  Defendant's acceptance of responsibility has been fully accounted for in his Guidelines calculations.  (See PSR ¶¶ 31, 38-39, 47.)  A mid-range Guidelines sentence is just and necessary to avoid unwanted disparities with similarly situated defendants (see 18 U.S.C. § 3553(a)(6)), and is necessary to sufficiently deter defendant from future criminal activity.  A mid-range Guidelines sentence sufficiently accounts for both the seriousness of the offense, as well as defendant's characteristics and other conduct, when weighed against the other mitigating factors in the case.

Finally, a five-year term of supervised release is appropriate here.  (See Rec. Letter at 1, 5; PSR ¶¶ 100-01 (five-year period of supervised release is the statutory mandatory term.)   The five-year

period of supervised release will encourage defendant to remain law-abiding and also to address his substance abuse under the monitorship of the court, and protect the public by allowing for monitoring of defendant to assure he does not again engage in criminal conduct.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests the imposition of a sentence of 166 months' imprisonment, five years of supervised release, and a mandatory special assessment of $100.

**DECLARATION OF RACHEL N. AGRESS**

I, Rachel N. Agress, declare:

1. I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify to them. I am an Assistant United States Attorney in the Central District of California and am assigned to this case.

2. Attached as **Exhibit A** is a true and correct copy of the abstract of judgment in People of the State of California v. Angel Phillip Angulo, Jr., Case No. RIF120329, Superior Court of California, County of Riverside.

3. Attached as **Exhibit B** is a true and correct copy of the Complaint in People of the State of California v. Angel Phillip Angulo, Jr., Case No. RIF120329, Superior Court of California, County of Riverside.

4. Attached as **Exhibit C** is a true and correct copy of the Minute Order of the change of plea hearing in People of the State of California v. Angel Phillip Angulo, Jr., Case No. RIF120329, Superior Court of California, County of Riverside.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on February 11, 2020, in Los Angeles, California.

/s/ Rachel N. Agress
RACHEL N. AGRESS
Assistant United States Attorney

11